UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| STERLING SUFFOLK RACECOURSE, LLC, | ) ) ) |
|       Plaintiff | ) ) |
| v. | ) )  No. 2:15-cv-90-JAW |
| DAVRIC MAINE CORPORATION, | ) ) ) |
|       Defendant | ) |

**MEMORANDUM DECISION ON MOTION FOR ATTACHMENT AND ATTACHMENT ON TRUSTEE PROCESS**

The plaintiff has filed a motion for approval of attachment on property of the defendant in the amount of $179,373.87. I previously denied a similar motion brought on an *ex parte* basis. ECF No. 7. For the reasons that follow, I grant the instant motion.

### I.     Applicable Legal Standard

A party may move for attachment in this court "in accordance with state law and procedure as would be applicable had the action been maintained in the courts of the State of Maine[.]" Local Rule 64. "An attachment of property shall be sought by filing with the complaint a motion for approval of the attachment. The motion shall be supported by affidavit . . . meeting the requirements set forth in subdivision (i) of this rule." Me. R. Civ. P. 4A(c). Subdivision (i) requires the affidavit to "set forth specific facts sufficient to warrant the required findings[.]" *Id.* (i).

Under Maine law, attachment and attachment on trustee process are available only for a specified amount, as approved by order of court, and only upon a finding that it is more likely than

not that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the aggregate sum of the attachment and any liability insurance, bond, or other security and attached property or credits shown by the defendant to be available to satisfy the judgment. *Id*. (c); Maine R. Civ. P. 4B(c).

## II.   Factual Background

The parties' respective affidavits present the following factual allegations.

For more than ten years, the plaintiff has conducted regular business with the defendant, which operates as Scarborough Downs. Affidavit of Jason Sordillo (ECF No. 8-1) ¶ 5.[1] The plaintiff made available to the defendant audio and video transmissions of live horse races run at Suffolk Downs, the plaintiff's race track, or other tracks, and settled wager accounts between the defendant, Suffolk Downs, and other tracks so that the defendant's customers could place bets on races at tracks other than Scarborough Downs. *Id*.

The business arrangement between the plaintiff and the defendant is governed by the *Racing Industry Uniform Simulcast Wagering Agreement, Version 002* (the "Contract"), to which both are parties. *Id*. ¶ 6. Under the Contract, the simulcast "guest" (Scarborough Downs) is obligated to pay to the simulcast "host" (Suffolk Downs) commissions on wagers made at the guest track for races run at the host track or other tracks that share their races via simulcast. *Id*. ¶ 7. Also under the Contract, the guest is obligated to reimburse the host for "interface" fees paid to a pari-mutuel "totalizator" company that maintains equipment and machinery that records the bets, calculates odds, and calculates payoffs. *Id.* ¶ 11. Under the Contract, the guest is obligated to pay the host "hub" fees for sending the simulcast signal at the rate of $4,000 per month. *Id.* ¶ 13. The Contract also obligates the guest to pay the host for sums owed to Suffolk Downs and other tracks

---

[1] An apparently identical Affidavit of Jason Sordillo has been submitted as ECF No. 16.

for losing bets made at Scarborough Downs. *Id*. ¶ 15. The total currently past due and owed by the defendant to the plaintiff for all of these costs and fees is $179,373.87. *Id*. ¶ 17.

Despite due demand, the defendant has not paid the sum it owes to the plaintiff. *Id*. ¶ 21.

The plaintiff has made many mistakes in bookkeeping in its relationship with the defendant, including failing to credit payments made by the defendant, failing to credit the plaintiff with payments made by other tracks for accounts handled for the plaintiff by the defendant, and incorrect billing. Affidavit of Denise Terry ("Terry Aff.") (ECF No. 15-1) ¶ 2. The plaintiff's accounting for bets placed at the defendant's track, in particular, has included errors, omissions, and mistakes. *Id*. ¶ 3. One event involving payments made by other tracks for the benefit of the defendant is an electronic funds transfer in the amount of $11,868.30 made to the plaintiff on or about January 28, 2011, which the plaintiff has not yet credited to the defendant, despite the provision of routing information to the plaintiff by the payor. *Id*.

The defendant has requested from the plaintiff an accounting of the amounts that the plaintiff claims it sent to other tracks to cover disproportionately high losing bets placed at the defendant's track, but none has been received. *Id*. ¶ 4. Assuming that this claim is correct, the most that the defendant would owe the plaintiff is $141,029.63. *Id*. ¶ 5.[2] The defendant may owe the plaintiff "substantially less" than this once the plaintiff provides the defendant with verification of the amounts owed. *Id*. ¶ 6.

---

[2] The Terry affidavit says that this number includes all of the amount claimed by the plaintiff for these "money room" accounts, but then breaks down the figure of $141,029.63 to include approximately $62,000 *less* for this claim than the amount claimed by the plaintiff. Terry Aff. ¶ 5. This unexplained inconsistency, which constitutes more than the difference between the amount claimed by the plaintiff and the amount that the defendant contends is the most that it could possibly owe the plaintiff, diminishes the value that the court is willing to assign to the Terry affidavit.

The defendant does not object to attachment of its real property in the amount of $141,029.63 "pending resolution of these accounting issues." *Id*. ¶ 7. It has "many millions of dollars of equity" in the land that it owns. *Id.*

### III.    Discussion

The issue before the court, therefore, is whether the attachment sought by the plaintiff should be in the amount of $179,373.87, the plaintiff's figure, or $141,029.63, the defendant's figure. The court need not tarry long over this $38,344.24 question.

The Sordillo affidavit provides a more extensive, detailed basis for the amount of the attachment sought by the plaintiff than does the Terry affidavit for the lesser amount advocated by the defendant. The Terry affidavit does not explain its differences with the component numbers included in the Sordillo affidavit, instead asserting merely that the numbers it lists are "[t]he most Davric could owe Suffolk for any services provided by Suffolk[.]" Terry Aff. ¶ 5. It does not mention at all the $4,579.77 in commissions listed in paragraph 10 of the Sordillo affidavit.

### IV.    Conclusion

Accordingly, I conclude that it is more likely than not that the plaintiff will recover judgment in this action, including interest and costs, in an amount equal to or greater than $179,373.87. The motion for attachment in that amount is **GRANTED** as to any real property owned by the defendant; no need for attachment on trustee process has been shown.

### *NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to any further appeal of this order.*

Dated this 21st day of July, 2015.

                                                  <u>/s/  John H. Rich III</u>
                                                  John H. Rich III
                                                  U.S. Magistrate Judge

Dated this 21st day of July, 2015.

                                                 <u>/s/  John H. Rich III</u>
John H. Rich III
U.S. Magistrate Judge